UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:09-CV-0867-B |
| HISAW & ASSOCIATES GENERAL CONTRACTORS, INC., RICHARD L. HISAW, and KATHRYN REHM-HISAW | § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Request for Attorneys' Fees (doc. 175), filed January 24, 2011, and Defendants' Motion to Strike Plaintiff's Attorneys' Fees Statements from Evidence (doc. 179), filed February 14, 2011. For the reasons fully discussed below, the Court finds that Plaintiff's Request for Attorneys' Fees should be and hereby is **GRANTED in part** and **DENIED in part** and that Defendants' Motion to Strike should be and hereby is **DENIED**.

### I.
### BACKGROUND

As discussed fully in the Court's Order on the parties' Motions for Summary Judgment (doc. 122), this action arises out of a Surety Agreement between Plaintiff Liberty Mutual Insurance Company ("the Surety"), Defendant Hisaw & Associates General Contractors, Inc. ("HAGC"), and Defendants Richard and Kathryn Hisaw ("the Hisaws"). HAGC served as general contractor on several public construction projects that required payment and performance bonds. (Pl.'s Mot.

Summ. J. Regarding Losses 7). In order to satisfy this obligation, HAGC contracted with the Surety for the issuance of twenty bonds in favor of the various owners of the construction projects. (Defs.' Mot. Summ. J. App. 2). If HAGC was unable to complete a project, the Surety would step into its shoes to ensure completion of the job. (*Id.*).

Following standard company practice, the Surety required HAGC and the Hisaws to enter a General Agreement of Indemnity ("the Indemnity Agreement"). (*See* Pl.'s Mot. Summ. J. Regarding Losses 6). This Indemnity Agreement provided that HAGC and the Hisaws would be jointly and severally liable for "losses, fees, costs[,] and expenses of whatsoever kind of nature" that the Surety suffered due to the enforcement of one of its performance and payment bonds. (*See* Indemnity Agreement 1). An Amendment to the Indemnity Agreement limited the Hisaws' liability to "the full extent of any funds or assets of [HAGC] received by the [Hisaws] as a result of distributions, payments or dividends or bonuses, redemption of stock, loans, or sale of assets" that either caused the value of HAGC to dip below $3,000,000 or occurred while the value of HAGC was less than $3,000,000. (*See* Indemnity Agreement 6).

HAGC failed to fully perform on several of its construction contracts, and multiple owners enforced their bonds against the Surety, leading to net losses for the Surety of $16,278,896. (Pl.'s Mot. Summ. J. Regarding Losses 7). Seeking to recover these losses, the Surety filed suit against HAGC in May 2009. (Pl.'s Original Compl. ¶¶13-30). Six months later, the Surety amended its Complaint to include the Hisaws as defendants as well. (Pl.'s Second Am. Compl. 1). The parties eventually filed cross-motions for summary judgment (doc. 58, 62, 64). The Surety maintained that the Indemnity Agreement unambiguously provided for joint and several liability on HAGC for the full $16,278,896 in losses and on the Hisaws for $2,252,930 in payments allegedly received by the

Hisaws. (*See generally* Pl.'s Mot. Summ. J. Regarding Losses). The Hisaws disagreed, contending that they were not obligated to indemnify the Surety because of the limitations on liability imposed by the Amendment to the Indemnity Agreement. (Defs.' Mot. Summ. J. 7). HAGC also disagreed, arguing that is was not obligated to indemnify the Surety because the Surety failed to settle its claims with the owners in good faith. (Defs.' Br. in Supp. of Resp. to Pl.'s Mot. Summ. J. Regarding Losses 21-23).

In its Memorandum Opinion & Order (doc. 122) on the parties' motions for summary judgment, the Court found that HAGC was liable under the Indemnity Agreement for $15,034,831.12 of the $16,278,896 sought. (Oct. 25, 2010 Mem. Op. & Order 15-20). As to the Hisaws, however, the Court found that the Amendment did in fact greatly limit the Hisaws liability under the Indemnity Agreement. (*See id.* at 7-15). After determining the unambiguous meaning of "loan" and "distribution" under the Amendment, the Court concluded that the bulk of the payments challenged by the Surety as "loans" or "distributions" were in fact disbursed to third parties. *Id.* Thus, these payments were unambiguously excluded from the Amendment. *Id.* The one type of payment that the Court found was in fact a "distribution" under the Amendment was the payment of salaries to the Hisaws. *Id.* at 14. The parties have since stipulated that the total amount of salary payments that went to the Hisaws was $45,000 (doc. 165).

The Surety now moves for attorneys' fees, seeking to recover an award of $354,349 for attorneys' fees and $21,476.78 for costs incurred jointly and severally against HAGC and the Hisaws. (Pl.'s Br. in Supp. of Request 8). In particular, the Surety contends that as the prevailing party on its breach of contract claims, it is entitled to an award of attorneys' fees pursuant to Section 38.001(8) of the Texas Civil Practice and Remedies Code and entitled to an award of costs as a

prevailing party pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 1920-31. (*Id.* at 2). The Surety further urges that it need not prevail on the full extent of its claims in order to recover the entirety of its attorneys' fees, nor must it segregate its fees expended in suing HAGC from those expended in suing the Hisaws. (*Id.* at 5-6).

In their Response, Defendants admit that an award of fees and costs against HAGC is proper. (Defs.' Resp. i). However, they contend that an award of fees against the Hisaws would be unreasonable because the Surety only obtained an award of less than one-third of one percent (.3%) of the initial amount sought against the Hisaws, and the judgment against them is insignificant when compared to the original amount sought. (*Id.* at 3). Defendants also maintain that the attorneys' fees must be segregated because they are attributable to separate defendants and separate causes of action. (*Id.* at 5).[1]

The Surety filed its Reply (doc. 181) on February 28, 2011, reasserting its entitlement to its reasonable attorneys' fees. The Request for Attorneys' Fees thus being ripe, the Court now turns to the merits of its decision.

## II.

## LEGAL STANDARD

An award of attorneys' fees "is governed by the same law that serves as the rule of decision for the substantive issues in the case." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

---

[1]Defendants have also filed a Motion to Strike (doc. 179), in which they object to the Court's consideration of the Surety's attorneys' fees statements. Defendants argue that the Surety failed to disclose these statements prior to the discovery deadline in this case, and therefore cannot rely on those statements in its Request. (Defs.' Mot. Strike 1). The Surety responds (doc. 183) that it did timely make the statements available to the Defendants. (Pl.'s Resp. 1). Defendants neither filed a Reply, nor sought to controvert the evidence submitted in the Surety's Appendix. Accordingly, the Court finds that Defendants' Motion to Strike should be and hereby is **DENIED**.

Texas law provided the rule of decision in this case. (*See generally* Oct. 25, 2010 Mem. Op. & Order). Under Texas law, attorneys' fees may be awarded in this matter pursuant to Texas Civil Practice and Remedies Code section 38.001, which provides that a prevailing party "may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code § 38.001. "To recover fees under Section 38.001, a party must (1) prevail on a cause of action for which fees are recoverable, and (2) recover damages." *Penhollow Custom Homes, LLC v. Kim*, 320 S.W.3d 366, 375 (Tex. App.—El Paso 2010, no pet.). Texas law presumes "that the usual and customary attorney's fees for a claim of the type described in Section 38.001 are reasonable." Tex. Civ. Prac. & Rem. Code § 38.003. However, the presumption of reasonableness may be rebutted. *Id.* In addition to hearing testimony and receiving other evidence, the court may take judicial notice of reasonable and customary fees along with the contents of the case file in evaluating a request for attorneys' fees. *See Id.* § 38.004; *Gill Savings Ass'n v. Chair King, Inc.*, 797 S.W.2d 31, 32 (Tex. 1990); *cf. City of Fort Worth v. Groves*, 746 S.W.2d 907, 918 (Tex. App.–Fort Worth 1988, no writ) (observing that the court can draw on its own experience as a lawyer and a judge and must look at the entire record to determine a reasonable fee).

The Texas Supreme Court has established several factors to be used in considering the reasonableness of a requested fee amount:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly;
>
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;

    (4) the amount involved and the results obtained;

    (5) the time limitations imposed by the client or by the circumstances;

    (6) the nature and length of the professional relationship with the client;

    (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

    (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). In order to recover one's attorneys' fees, a party need not establish all eight factors. *Santos v. Texas Enters., Inc.*, No. 03-09-00579-cv, 2010 WL 4054479, at *2 (Tex. App.—Austin Oct. 15, 2010, no pet.).

### III.

### ANALYSIS

Defendants do not object to an award of attorneys' fees and costs against HAGC, nor do they object to the reasonableness of the respective $354,349 or $21,476.78 figures with respect to such an award. (*See* Defs.' Resp. i). Instead, they raise two primary challenges to the reasonableness of any award of fees or costs against the Hisaws. The Court turns first to Defendants' objections and then to its analysis of what award of fees against Defendants is most reasonable.

    A.    *Whether a Recovery of 0.3% of the Initial Amount Sought Precludes Any Recovery*

Defendants first contend that attorneys' fees should not and cannot be awarded against the Hisaws because any award of fees would be unreasonable in light of the fact that the Surety's recovery on its claim against the Hisaws ($45,000) pales in comparison to the amount it initially sought (over $13,000,000). (Defs.' Resp. 2-5). Defendants point out that this recovery is less than

one-third of one percent (0.3%) of the amount Defendants were seeking.[2]

Texas law does not require that a party recover all damages sought or even "substantially" prevail on its breach of contract claim to recover reasonable attorneys' fees. *Penhollow*, 320 S.W.3d at 375. Notably, Defendants do not cite to a single case that states that a court cannot award attorneys' fees when a party's degree of success falls below a certain percentage. Texas courts are clear that a court may award attorneys' fees when a plaintiff only receives nominal damages. *See Intercontinental Group Partnership v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 654-55 (Tex. 2009) (citing *Farrar*, 506 U.S. 113-14); *see also Williams v. Kaufman Cty.*, No. 3:97-cv-875-L, 2003 WL 21755913, at *9 (N.D. Tex. July 30, 2003) (awarding $373,555.45 in attorneys' fees after plaintiffs had only received award of $300 in nominal damages and $45,000 in punitive damages); *see also Wolk v. Gonzalez*, 262 F.3d 528, 535 & n.13 (5th Cir. 2001) ("[N]ominal relief does not necessarily a nominal victory make." (citation omitted)). In other words, courts refuse to set any minimum threshold or bright line for determining success. *See id.*

Furthermore, the Fifth Circuit, in dealing with a case where actual recovery was far less than the initial amount sought, affirmed a large attorneys' fees award. *See Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 258 F.3d 345, 354-55 (5th Cir. 2001). In *Northwinds*, the Court first noted that "it is well established that the most critical factor in determining an award of attorneys' fees is the 'degree of success obtained' by the victorious plaintiffs." *Id.* Nonetheless, the Court

---

[2]While it is non-determinative to the Court's analysis, the Court disagrees with Defendants' calculation of the amount Lincoln General sought to recover from the Hisaws. It is unclear from Defendants' Appendix precisely where their $13,000,000 figure comes from. (*See* Defs.' Resp. 2 & n. 14). At summary judgment, the sum total of funds upon which the Surety moved for summary judgment was $2,252,930. (*See* Defs. Mot. Summ. J. Regarding Losses 13-15). In terms of the $45,000 recovery on the Hisaws' salary, this means that the Surety recovered 2% of what it was initially seeking.

upheld an award of $712,000 in attorneys' fees when the actual damages awarded were $74,570, an amount that was "a tiny fraction of the multi-million dollar recovery it sought." *Id.* The Court also stated that it reached this holding despite the fact that the plaintiff had only prevailed on "two of its original laundry list of claims" and thus were "not very successful in their prosecution of the suit." *Id.*

While the Court agrees with Defendants that the degree of success obtained by a plaintiff is the most important factor to consider, the fact that a plaintiff may have only recovered a very small portion of the amount it sought does not preclude the plaintiff as a matter of law from recovering some or all of its attorneys' fees. Indeed, in following the above precedent from the Texas Supreme Court and the Fifth Circuit, the Court refuses to establish a minimum threshold of success necessary to recover one's attorneys' fees. Instead, a court must consider the degree of success in the context of the particular facts before it in determining what portion, if any, of the requested fees should be awarded.

Defendants alternatively contend that the Surety could not possibly have expended fees on a claim on which it never sought to recover. (Pl.'s Resp. 4-5). Defendants point to court transcripts where the Surety purportedly stated that it never sought to recover salaries from the Hisaws. (*See id.* 4 & n. 35). However, the Surety clearly did seek to recover salary payments to the Hisaws at summary judgment—in its Motion for Summary Judgment Regarding Losses, the Surety unequivocally stated that it was seeking to recover:

> "h.  Payment of $152,299.70 by HAGC for salary of employees, *including the Hisaws.*
> The Hisaws concede that money was paid *to them* by HAGC for salary. Yet, it is argued that *this payment* does not constitute a distribution, *which is contradicted by the plain meaning of the term*."

(Pl.'s Mot. Summ. J. Regarding Losses 14-15 (emphasis added)). Nor did Defendants object at summary judgment that recovery of the salary payments was not properly plead or contained in discovery responses. Accordingly, the Court cannot find, as Defendants urge, that the Surety could not have expended fees on its lone successful claim against the Hisaws.

*B.     Whether Segregation Is Proper*

Defendants also maintain that any award of fees should be segregated between work performed for HAGC and work performed for the Hisaws. (Defs.' Resp. 5-8). They contend that under Texas law attorneys' fees must be segregated when they are "attributable to separate defendants and separate causes of action." (*Id.* at 5). Defendants argue that the Surety's claims against the Hisaws "arise out of completely different sets of facts" from their claims against HAGC, and point out that seven months of discovery occurred before the Hisaws were even brought into the suit. (*Id.* at 6-7). Finally, Defendants urge the Court to also segregate any fees expended by the Surety in defending against Defendants' counterclaims. (*Id.* at 7-8).

A party seeking attorneys' fees has a duty to segregate nonrecoverable fees from recoverable fees. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). In 1991 the Texas Supreme Court of Texas in the *Sterling* case recognized an exception to this duty to segregate:

> A recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their "prosecution or defense entails proof or denial of essentially the same facts." Therefore, when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are "intertwined to the point of being inseperable," the party suing for attorney's fees may recover the entire amount covering all claims.

*Id.* (quoting *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11-12 (Tex. 1991)) (internal citations omitted). The Supreme Court of Texas later revisited the *Sterling* exception and modified it as

follows:

> Accordingly, we reaffirm the rule that if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees. Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that the need not be segregated. We modify *Sterling* to that extent.

*Id.* at 313-14. A court may impose joint and several liability for attorneys' fees against multiple defendants when there is a "single indivisible injury" and "each party played a substantial role in the litigation." *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 772-73 (5th Cir. 1996).

Here, the Surety's claims against HAGC and the Hisaws share the same fundamental basis—HAGC's failure to perform and resultant breach of the indemnity agreements. In order to recover from the Hisaws, the Surety first had to prove its claims against HAGC. The Surety then additionally had to prove that the Hisaws violated the terms of the Amendment to the Indemnity Agreement in receiving certain types of payments from HAGC. As indicated in the Surety's billing reports (Pl.'s App. in Supp. of Request 60-244), the additional work needed to discover these payments was minute compared to the initial task of proving the extent of HAGC's liability under the indemnity agreements.

Texas law allows recovery of "the total amount of the attorneys' fees" when "discrete legal services advance both recoverable and nonrecoverable claims." *Penhollow*, 320 S.W.3d at 376 (citing *Chapa*, 121 S.W.3d at 313). The work done by the Surety's attorneys on its claims against HAGC, including for the seven months prior to the joinder of the Hisaws in this suit, was necessary to the advancement of the Surety's successful claim against the Hisaws. Thus, the Court rejects Defendants' argument that fees the Surety expended on its claims against HAGC should be

segregated from the fees it expended against the Hisaws.

Finally, the Court also declines to accept Defendants' argument that fees expended by the Surety in defending against Defendants' counterclaims should be segregated. In their counterclaims, Defendants requested a declaratory judgment that the Hisaws did not breach their contractual obligations. (*See generally* Defs.' Counterclaims). If the Hisaws had succeeded on this declaratory judgment claim, the Surety would not have been able to prevail on its claims for breach of contract against them. (*See* Defs.' Br. in Supp. of Mot. Summ. J. 8-20). The Texas Supreme Court has held that where a party's defense of counterclaims is necessary in order for the party to recover on its own breach of contract claim, those fees are recoverable. *Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007). Accordingly, the Court finds that the Surety can recover fees expended in its defense of the Hisaws' counterclaims.

  C. *Whether the Surety's Requested Fees and Costs Are Reasonable*

While a plaintiff may be able to recover its full attorneys' fees and costs when it does not recover the full amount initially sought, the Court must nevertheless be satisfied that any award of fees is reasonable and properly supported by the evidence presently before it. "The claimed fee must be reasonable under the particular circumstances of the case and have some reasonable relationship to the amount in controversy or to the complexity of the issue to be determined." *Tex. Commerce Bank Nat'l Assoc.*, 907 F.2d at 1575. In determining whether a requested fee amount is reasonable on a breach of contract claim, the court has "wide discretion" in determining the proper amount under the *Arthur Anderson* factors. *See Partners Lending Auto Group, L.L.C. v. Leedom Fin. Servs., L.L.C.*, No. 10-20626, 2011 WL 2650877, at *2 (5th Cir. July 7, 2011) (citations omitted); *McNamara v. Fulks*, 855 S.W.2d 782, 784 (Tex. App.—El Paso 1993, no writ). Of particular import

in the instant case, both the United States Supreme Court and Texas Supreme Court have stated that the most important factor courts should consider in determining whether an award of fees is reasonable is the amount involved and the success obtained. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 548 (Tex. 2009) (citing *Farrar*, 506 U.S. at 114).

As discussed above, in order for the Surety to succeed on its claim for return of salary payments to the Hisaws under the Indemnity Agreement and its Amendment, it had to first prove its claims against HAGC. Nonetheless, the fact remains that the Surety only recovered on 2% of its total claims against the Hisaws. While in other cases a 2% recovery may justify full recovery of one's fees, the Court finds the particular circumstances of this case do not warrant full fee recovery. It strains reason to conclude that the Court should hold the Hisaws jointly and severally liable with HAGC on the full amount of fees when the Surety was close to 100% successful against HAGC and only 2% successful against the Hisaws. Because the Surety necessarily had to expend the majority of its fees in order to recover on its salary claims against the Hisaws, and at the same time because the Surety nevertheless ultimately succeeded on only 2% of the recovery it sought, the Court finds that the Hisaws' liability for the Surety's attorneys' fees should be decreased by fifty (50) percent. Thus, an award of $177,174.50 is the most reasonable award of attorneys' fees against the Hisaws in this case. *See Arnold v. U.S. Dep't of Interior*, 252 F.3d 435, 2001 WL 360769, at *1 (5th Cir. 2001) (finding trial court did not abuse discretion in decreasing fee award by 35% in light of limited success of lawsuit); *see also Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007) (stating that district court did not abuse discretion in awarding only 60% of expended attorney's fees).

With no written opposition by the Defendants to the award of fees against HAGC, and in light of the Surety's near-complete success on its indemnity claims against HAGC, the Court finds the Surety is entitled to the full $354,349 in fees from HAGC.

Finally, with respect to Defendants' arguments that the Hisaws should not be liable for the Surety's costs in this case, the court disagrees. Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). There is a strong presumption that a court should award costs under this Rule. *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006) (citing *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985). Thus, before reducing a prevailing party's request, a court must first "articulat[e] some good reason for doing so." *Id.* at 794 (citing *Schwartz*, 767 F.2d at 131). Among the reasons a court may reduce costs are "(1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources." *Id.* (citing 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2668, at 234 (1998)). Defendants' only objection to the imposition of costs is that the Surety only succeeded on 2% of its claims against the Hisaws. (*See* Defs.' Resp. 10-11). However, this objection alone is not enough for the Court to find that Defendants have overcome the heavy presumption in favor of the complete award of costs. Accordingly, the Court awards the Surety the full $ 21,476.78 in costs it seeks against Defendants jointly and severally.

IV.

CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** the Surety's Request for Attorneys' Fees. The Surety's Request is **GRANTED** to the extent it seeks an award of $354,349 in attorneys' fees against Defendants HAGC and the Hisaws. However, the Motion is **DENIED** to the extent it seeks to impose joint and several liability on the Hisaws for the full amount of the award. Instead, the Court finds that the joint and several liability of the Hisaws should be limited to $177,174.50.

The Request is also **GRANTED** to the extent it seeks an award of costs of $ 21,476.78 against Defendants jointly and severally.

Finally, the Court **DENIES** Defendants' Motion to Strike. A separate judgment in this case will follow.

**SO ORDERED.**

DATED August 23, 2011

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE